IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **VITRA DENISE FREDERICK,** | § | |
| **Plaintiff** | § | |
| | § | |
| **V.** | § | |
| | § | **CIVIL ACTION NO.  5:21-cv-00381-olg** |
| | § | |
| | § | |
| **CITY OF LEON VALLEY, TEXAS** | § | |
| **Defendant.** | § | |

## PLAINTIFF'S BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

COMES NOW, Vitra Denise Frederick, the Plaintiff, to submit this Response to Defendant's, City of Leon Valley, Texas, Motion for Summary Judgment. Pursuant to Federal Rule of Civil Procedure 56, the requirements of briefing are satisfied within Plaintiff's Brief in Support of her Response to Defendant's Motion for Summary Judgment, which is incorporated herein.

Respectfully submitted,
THE WILEY LAW GROUP PLLC

By: /s/ Kevin S. Wiley, Jr.
   Kevin S. Wiley, Jr.
   Texas Bar No. 24029902
   325 N. St. Paul Street, Suite 4400
   Dallas, Texas 75201
   (469) 619-5721 Telephone
   (469) 619-5725 Facsimile
   ATTORNEYS FOR PLAINTIFF
   **Vitra Denise Frederick**

## TABLE OF CONTENTS

I.      INTRODUCTION…………………………………………………………..…………1

II.     SUMMARY JUDGMENT EVIDENCE……….……………………………….………..3

III.    BACKGROUND FACTS……………..……………………………………….……….3

IV.     DISPUTED FACTS……..…………………………………….....................................9

V.      ISSUES OF LAW……..…………………………………....................................10

VI.     SUMMARY JUDGMENT……..……………………………………….....................10

        A. Summary Judgment: The Appropriate Legal Standard……………………..............10

        B. Credibility Issues and Summary Judgment Standard……………………..……......12

VII.    ARGUMENT AND AUTHORITIES……………..…………………………….……....13

        A. Burden Shifting Analysis………………………………...........................................13

        B. Plaintiff has established a prima facie case for discrimination………......…….…..13

        C. Defendant's legitimate, non-discriminatory
           reason for termination is pretext for discrimination…..……………………...…15

        D. Defendant's conduct constituted retaliation…………………………………………15

        E. Defendant subjected Plaintiff to hostile work environment…………………………..17

CONCLUSION AND PRAYER…………………………………………………...…………...18

**TABLE OF AUTHORITIES**

**CASES**

*Anderson v. Liberty Lobby Inc.*
477 U.S. 242, 248, 106 S.Ct. 2505,2510, 91 L.Ed.2d 202 (1986)...........................10

*Atchison, Topeka and Santa Fe Ry. Co. v. Buell*
480 U.S. 557, 568 (1987)...............................................................................11

*Banks v. E. Baton Rouge Parish Sch. Bd.*
320 F.3d 570, 575 (5th Cir. 2003)..................................................................16

*Bell v. Cameron Meadows Land Co.*
669 F.2d 1278 (9th Cir. 1982)........................................................................10

*Boeing Co. Shipman*
411 F.2d 365, 375 (5th Cir. 1969)...................................................................12

*Bishop v. Wood*
426 U.S. 341 (1976)......................................................................................8

*Celotex Corp. v. Catrett*
477 U.S. 316, 324 (1986)..........................................................................10,11

*Collins v. Baptist Memorial Geriatric Center*
937 F.2d 190 (5th Cir. 1991)..........................................................................12

*Davis v. Dallas Area Rapid Transit*
383 F.3d 309, 317 (5th Cir. 2004) ...................................................................11

*Diaz v. Fort Wayne Foundry Corp.*,
131 F.3d 711, 713 (7th Cir. 1997)....................................................................29

*Fields v. City of South Houston*
922 F.2d 1183 (5th Cir. 1991).........................................................................11

*Frito Lay, Inc. v. Retail Clerks Union No. 7*
629 F.2d 653,656 (10th Cir 1980).....................................................................10

*Garcia v. Pueblo Country Club*
299 F.3d 1233, 1236-37 (10th Cir. 2002).............................................................11

*Harris v. Forklift Sys., Inc.,*
      510 U.S. 17, 21 (1993)…………………………………………………………………17

*Harvill v. Westward Comms., LLC,*
       433 F.3d428, 434–35 (5th Cir. 2005)…..………………………………………………17

*Hockman v. Westward Communications, LLC,*
      407 F.3d 317 (5th Cir. 2004)…………………………………………………..….…..18

*Int'l Union, United Auto., Aerospace and Agric. Implement Workers v.
Johnson Controls, Inc.,*
      499 U.S. 187, 204 (1991)……………………………………………………..….…14

*In Burlington Northern & Santa Fe Railway Co. v. White,*
      548 U.S. 53, 62 (2006)………………………………………………………………..14

*J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.,*
      76 F. 3d 1245, 1251 (1st Cir. 1996)…………………………………………...............11

*Kanida v. Gulf Coast Med. Pers. LP*
       363 F.3d. 568, 574-75 (5th Cir. 2004) …………………………………………………13

*Lavespere v. Niagara Mach. & Tool Works*
      910 F.2d 167, 178 (5th Cir. 1992)…………………………………………………………11

*Lindsey v. Prive Corp.*
      987 F.2d 324, 61 FEP Cases 770 (5th Cir. 1993)…..…………………………………....12

*McDonnell Douglas v. Green*
      411 U.S. 792 at 802 (1973) …………..…….….………………………………13,14,15

*Okoye v Univ. Tex. Houston Health Sci. Ctr.*
      245 F.3d 507, 512-513 (5th Cir. 2001). ………………………………………......13

*Oncale v. Sundowner Offshore Services, Inc.*
      523 U.S. 75 (1998)………………………………………………………………………18

*Price v. City of Fort Wayne,*
      117 F.3d 1022 (7th Cir. 1997)……………………………………………………..15

*Reeves v. Sanderson Plumbing Products, Inc.*
      530 U.S. 133, 142 (2000) ……………………………………………………..……11

*Resolution Trust Corp. v. 1601 Partners*
      796 F. Supp 238 (N.D. Tex. 1992)………………………………………………....11

iv

*United States v. Diebold*
     369 U.S. 654,655 (1962)…………………………………………………………………11

## STATUTES

Title VII of the Civil Rights Act of 1964……………………………………………...………11

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **VITRA DENISE FREDERICK,** | § | |
| **Plaintiff** | § | |
| | § | |
| **V.** | § | |
| | § | **CIVIL ACTION NO.  5:21-cv-00381-olg** |
| | § | |
| | § | |
| **CITY OF LEON VALLEY, TEXAS** | § | |
| **Defendant.** | § | |

**PLAINTIFF'S BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

COMES NOW, Vitra Denise Frederick ("Plaintiff" or "Frederick") to submit this Brief in support of her Response to the City of Leon Valley, Texas's ("Defendant" or "Leon Valley") Motion for Summary Judgment, and in support thereof, respectfully shows as follows:

## I. INTRODUCTION

1.     Plaintiff, an African American woman, initiated her employment with Defendant as its City Attorney on June 23, 2016.  Plaintiff filed this suit against Defendant after Defendant subjected Plaintiff to a hostile work environment, discrimination based upon her gender and race, and retaliation.

2.     On November 30, 2019, Plaintiff was officially terminated from her position by vote of Defendant's City Council. Prior to this termination, Plaintiff was subjected to a continued pattern and practice of race discrimination and harassment.  The harassment and a hostile working environment occurred mainly at the hands of a City Council member, Benny Martinez. Although Mr. Martinez is not a licensed attorney, he constantly berated Plaintiff in front of Defendant's City Council during both private and public sessions. Mr. Martinez also attempted to undermine Plaintiff's credibility with Defendant and have Defendant terminated by informing third parties

Plaintiff "did not know what she was doing as the City Attorney" and "failed to provide proper legal advice."

3.      Contrary to Mr. Martinez's accusations, Plaintiff was well qualified to perform her duties as a City Attorney. Prior to Plaintiff's employment with Defendant, Plaintiff was employed as an assistant City Attorney with the City of San Antonio for over twenty years, and during those twenty years, Plaintiff obtained substantial expertise in municipal law.

4.      By January of 2019, Plaintiff verbally expressed her concerns to Defendant's Mayor and the City Manager that the treatment she received from Mr. Martinez was creating a hostile working environment and obviously discriminatory based upon Plaintiff's race and gender. Despite expressing these concerns, the harassment did not stop. Mr. Martinez continued to berate, harass, and belittle Plaintiff's work. Consequently, Plaintiff filed an internal Complaint Report to the City Manager.

5.      Upon receipt of the Complaint Report, Defendant made a hollow attempt at investigating the issue. Defendant hired outside counsel to interview certain fact witnesses regarding Plaintiff's Complaint Report. However, despite clear evidence to the contrary, the investigation resulted in no findings of harassment or discrimination. This only emboldened Mr. Martinez to continue his behavior which resulted in several additional complaints filed by other City of Leon Valley employees.

6.      Ultimately, Plaintiff informed the City Manager that she was considering filing a complaint with the Equal Employment Opportunity Commission (EEOC). However, prior to filing a complaint with the EEOC, Plaintiff was informed that her position would be eliminated by a reduction in force due to "budgetary reasons." Said another way, Defendant's excuse for eliminating the City Attorney position was that Defendant could no longer afford the position. Yet,

Defendants own summary judgment evidence disproves this excuse when comparing the hourly rate of Defendant's outside counsel who replaced Plaintiff to Plaintiff's hourly rate.

7.      In summary, Plaintiff was discriminated against on the basis of her race and gender, subjected to hostile working environment by her employer, and retaliated against in violation of Title VII of the Civil Rights Act of 1964, et. seq.  7. Mr. Martinez's behavior resulted in several complaints against him and the City of Leon Valley. Despite these complaints, Plaintiff was the only person terminated from her position.

8.      Plaintiff responds to Defendant's motion for summary judgment on all of Plaintiff's claims as set forth in the Argument and Authorities cited herein. As genuine issues of material fact exist with regards to Plaintiff's allegations of race discrimination, hostile work environment, and retaliation, Defendant is not entitled to judgment as a matter of law.

## II. SUMMARY JUDGMENT EVIDENCE

This Response is supported by the following documents:

Exhibit A - Sworn Declaration of Vitra Denise Frederick

      Exhibit A-1 to Frederick Declaration – Response Letter to Ryan Henry Report

      Exhibit A-2 to Frederick Declaration – Cease and Desist Letter

      Exhibit A-3 to Frederick Declaration – Email from Josh Stevens

Exhibit B – April 16, 2019 Agenda Meeting Announcements

Exhibit C – Affidavit of Dr. Catherine Rodriguez

Exhibit D – Affidavit of Donna J. Charles

## III. BACKGROUND FACTS

9.      Defendant is a municipality located in the San Antonio metropolitan area, Bexar County, Texas. Defendant's governance consists of a City Council and Mayor presiding over major

governmental decisions of Defendant, and a City Manager operating the day-to-day functions of Defendant. These governing bodies serve Defendant's population of approximately 12,000 citizens.

10.     Plaintiff was employed by Defendant as its City Attorney beginning June 23, 2016.[1] She served as the City Attorney until she was terminated by Defendant effective November 30, 2019.[2]

11.     Plaintiff's duties as City Attorney included, but were not limited to, advising Defendant's Council on proposed City ordinances before they were adopted, application of existing ordinances, reviewing City contracts, advising the City Council on certain budgetary items, and answering questions regarding the potential legal ramifications of actions taken by City Council.[3] The foregoing duties were administered both in open sessions during City Council meetings and during Executive Sessions not open to the public.[4]

12.     Prior to taking the position with Defendant, Plaintiff was employed as an Assistant City Attorney for the City of San Antonio, Texas and held that position for over twenty years.[5] Over her tenure with the City of San Antonio, Plaintiff obtained substantial experience in both municipal law and knowledge regarding the inter-workings of municipal policies and procedures.[6]

13.     Plaintiff filed suit against Defendant because she was subjected to a continued pattern and practice of discrimination and harassment based upon her gender, female, and race, African-American.[7]

---

[1] Plaintiff's Exhibit A, Declaration of Vitra Denise Frederick, paragraph 2 (Pfs. Ex. A – Frederick Dec. Par. 2)
[2] Pfs. Ex. A – Frederick Dec. Par. 2
[3] Pfs. Ex. A – Frederick Dec. Par. 3
[4] Pfs. Ex. A – Frederick Dec. Par. 3
[5] Pfs. Ex. A – Frederick Dec. Par. 4
[6] Pfs. Ex. A – Frederick Dec. Par. 4
[7] Pfs. Ex. A – Frederick Dec. Par. 5

14.     Specifically, and in the earlier part of year 2018, Plaintiff started receiving continual harassment by former City Council member, Benny Martinez.[8] Although Mr. Martinez is not a licensed attorney, he constantly berated Plaintiff in front of the City Council during both public sessions and Executive Sessions.[9] He constantly questioned Plaintiff's knowledge, skill, and work ethic during these sessions.[10] He even continued his verbal abuse outside of City Council sessions by accosting Plaintiff and telling Plaintiff directly that she 'didn't belong' in the City of Leon Valley.[11] At points in time, Plaintiff felt physically threatened by Mr. Martinez because of his demeanor and his close approximation to Plaintiff as when he derided her outside of session.[12] Mr. Martinez consistently attempted to undermine Plaintiff's credibility with Defendant by suggesting publicly that she "did not know what she was doing as the City Attorney" and that she "failed to provide proper legal advice." [13]Defendant has no record of Plaintiff failing to conduct her duties as the City Attorney.

15.     Mr. Martinez had a reputation for being rude in and out of City Council sessions.[14] However, his level of acrimony towards Plaintiff was different than other employees of Defendant.[15] Mr. Martinez singled me Plaintiff out with his level of verbal abuse and clearly tried to have Plaintiff terminated.[16] Mr. Martinez was eventually joined by another council member, Will Bradshaw, and the Zoning Commissioner, Larry Proffitt, to continue their verbal abuse and harassment towards Plaintiff.[17]

---

[8]  Pfs. Ex. A – Frederick Dec. Par. 6
[9]  Pfs. Ex. A – Frederick Dec. Par. 6
[10] Pfs. Ex. A – Frederick Dec. Par. 6
[11] Pfs. Ex. A – Frederick Dec. Par. 6
[12] Pfs. Ex. A – Frederick Dec. Par. 6
[13] Pfs. Ex. A – Frederick Dec. Par. 6
[14] Pfs. Ex. A – Frederick Dec. Par. 7
[15] Pfs. Ex. A – Frederick Dec. Par. 7
[16] Pfs. Ex. A – Frederick Dec. Par. 7
[17] Pfs. Ex. A – Frederick Dec. Par. 7

16.     Eventually, Mr. Martinez and his cohorts succeeded in terminating Plaintiff, but not before she filed an official complaint for race and sex discrimination. After taking this abuse for weeks and months on end, Plaintiff discussed the harassment with the acting City Manager at the time and her direct report, Kelly Kuenstler.[18] Plaintiff advised Ms. Kuenstler that the harassment and threats were going beyond what a person in her position should deal with. Plaintiff also expressly told Ms. Kuenstler that she was being singled out as an African-American female and that she was the only employee with Defendant receiving this type of abuse.[19] Finally, Plaintiff informed Ms. Kuenstler that as the City Attorney, she was not only concerned about my job, but she was also concerned that conduct of Mr. Martinez, and those acting in concert with him, would eventually expose Defendant to a complaint for race and/or gender discrimination.[20] After several meetings Ms. Kuenstler regarding the harassing behavior towards Plaintiff, Ms. Kuenstler agreed to talk with the Messrs. Martinez and Bradshaw privately.[21] However, Ms. Kuenstler disagreed that she should support Plaintiff publicly or tell Mr. Martinez and Mr. Hull to cease their behavior in Executive Session.[22] Because Ms. Kuenstler failed to speak out publicly or heed Plaintiff's advice, matters were made worse as the harassment level increased.[23]

17.     Subsequently, Plaintiff filed an official complaint with Defendant on the basis of race and sex discrimination in the early part of 2019.[24] An investigation into her complaint for race and sex discrimination ensued which was administered by Attorney Ryan Henry with the Law Offices of Ryan Henry, PLLC.[25]

---

[18] Pfs. Ex. A – Frederick Dec. Par. 8
[19] Pfs. Ex. A – Frederick Dec. Par. 8
[20] Pfs. Ex. A – Frederick Dec. Par. 8
[21] Pfs. Ex. A – Frederick Dec. Par. 8
[22] Pfs. Ex. A – Frederick Dec. Par. 8
[23] Pfs. Ex. A – Frederick Dec. Par. 8
[24] Pfs. Ex. A – Frederick Dec. Par. 9
[25] Pfs. Ex. A – Frederick Dec. Par. 9

18.     Unfortunately, Mr. Henry concluded that there was no evidence of racial and sex discrimination.[26] His report was also filled with inaccuracies and misstatements.[27] Plaintiff, through her attorney, responded to the report and pointed out that the report completely disregarded her statements regarding the discriminatory bias Mr. Martinez exhibited towards Plaintiff.[28] A copy of this response letter to Mr. Henry's report is attached as Exhibit A-1.

19.     After the conclusion of the official complaint against Mr. Martinez, his conduct got progressively worse.[29] Mr. Martinez went as far as having a private citizen, who was his friend apparently, contribute to the harassment. This acquaintance of Mr. Martinez, a Mr. Josh Stevens, appeared at City Council meetings and also openly questioned Plaintiff's ability to do her job as a City Attorney.[30] He also sent personal and threatening emails to Plaintiff's private account.[31] By June, 2019, Plaintiff asked her attorney to send a cease and desist letter to Mr. Stevens directly. The letter is attached as Exhibit A-2.

20.     In the summer of 2019, Plaintiff once again informed Ms. Kuenstler that the discriminatory treatment was only getting worse.[32] Plaintiff asked Ms. Kuenstler to again support Plaintiff by publicly admonishing Mr. Martinez and anyone else acting in concert with Mr. Martinez to get them all to stop.[33] Ms. Kuenstler denied the request.[34] At that point, Plaintiff informed Ms. Kuenstler that she had little choice but to file a charge with the Equal Employment Opportunity Commission for race and sex discrimination.[35] Thereafter, in July 2019, Ms. Kuenstler advised

---

[26] Pfs. Ex. A – Frederick Dec. Par. 10
[27] Pfs. Ex. A – Frederick Dec. Par. 10
[28] Pfs. Ex. A – Frederick Dec. Par. 10
[29] Pfs. Ex. A – Frederick Dec. Par. 11
[30] Pfs. Ex. A – Frederick Dec. Par. 11
[31] Pfs. Ex. A – Frederick Dec. Par. 11
[32] Pfs. Ex. A – Frederick Dec. Par. 12
[33] Pfs. Ex. A – Frederick Dec. Par. 12
[34] Pfs. Ex. A – Frederick Dec. Par. 12
[35] Pfs. Ex. A – Frederick Dec. Par. 12

Plaintiff that Defendant would be going in another direction regarding legal services for Defendant.[36] Specifically, Ms. Kuenstler informed Defendant that Defendant would be eliminating the City Attorney position from the city budget to save Defendant money and resources.[37]

21.     On August 13, 2019, by vote of the City Council, which of course included Mr. Martinez's vote, Defendant eliminated the City Attorney position as a 'reduction in force' and transferred the functions of the City Attorney to outside counsel.[38]

22.     The reasons for eliminating Plaintiff's position were clearly pretextual. A reduction in force to transfer all functions of the City Attorney makes very little sense since the hourly rates for a private firm to perform the work Plaintiff performed are at least twice, if not three times, more than Plaintiff's hourly rate[39]. Defendant's own evidence submitted with its Motion for Summary Judgment supports this fact. Attached as Exhibit E to Defendant's Motion is the City Attorney Engagement letter with the firm Denton Navarro Rocha Bernal & Zech, P.C. providing City Attorney and Special Project rates at $210 per hour for Partners; $180 per hour for Associates; $125 per hour for law clerks; and $95 per hour for Paralegals.[40] Exhibit F to Defendant's Motion shows Plaintiff's pay rate at $42.29 per hour.[41] Hence, Plaintiff's pay rate was lower than the paralegals pay rate at the replacement law firm.

23.     Defendant, by way of discussions between Plaintiff and Ms. Kuenstler knew that Plaintiff was going to file a complaint with the EEOC.[42] Mr. Martinez's behavior resulted in several complaints against him and the City of Leon Valley.[43] The City Council asked Mr. Martinez to

---

[36] Pfs. Ex. A – Frederick Dec. Par. 12
[37] Pfs. Ex. A – Frederick Dec. Par. 12
[38] Pfs. Ex. A – Frederick Dec. Par. 13
[39] Pfs. Ex. A – Frederick Dec. Par. 13
[40] Defendant's Exhibit. E – Engagement Letter (Dfs. Ex. E)
[41] Dfs. Ex. F – Plaintiff's Personnel File Excerpts
[42] Pfs. Ex. A – Frederick Dec. Par. 14
[43] Pfs. Ex. A – Frederick Dec. Par. 14; Pfs. Ex. B Agenda Items Re: Martinez Complaints

voluntarily vacate his position to save themselves from suit.  He declined. Eventually, Defendant held hearings pursuant to City Charter and City Ordinances and removed Mr. Martinez from his position.[44]  Yet unlike other employees who may have lodged complaints against Mr. Martinez, Plaintiff was the only employee terminated from her position.[45] The decision to cut the City Attorney position, essentially terminating Plaintiff from Defendant, was agreed to in an Executive Session and later voted on in public.[46] The termination was effective November 30, 2019.[47]

24.     Defendant could not terminate Plaintiff for any work-related issues or due to poor performance, primarily because there were no records of performance issues. Instead, Defendant came up with the excuse that the position should be outsourced to a law firm for budgetary reasons.[48]

25.     On October 16, 2019, Plaintiff received another email from Mr. Stevens.[49] In the email Mr. Stevens indicates that eliminating the City Attorney position had nothing to do with the budget and that the City Manager 'orchestrated' her removal with the budgetary reason as a cover-up.[50] This email is attached as Exhibit A-3.

### IV. DISPUTED FACTS

**(a). Whether Defendant purposely discriminated against the Plaintiff on the basis of her race by terminating Plaintiff.**

**(b). Whether Defendant purposely discriminated against Plaintiff on the basis of her race by retaliating against Plaintiff for lodging an official complaint for race and gender discrimination.**

---

[44] Pfs. Ex. A – Frederick Dec. Par. 14
[45] Pfs. Ex. A – Frederick Dec. Par. 14
[46] Pfs. Ex. A – Frederick Dec. Par. 14
[47] Pfs. Ex. A – Frederick Dec. Par. 14
[48] Pfs. Ex. A – Frederick Dec. Par. 15
[49] Pfs. Ex. A – Frederick Dec. Par. 15
[50] Pfs. Ex. A – Frederick Dec. Par. 15

**V.**

**ISSUES OF LAW**

**Whether Plaintiff has stated a prima facie case of discrimination on the basis of Plaintiff's race and gender under Title VII of the Civil Rights Act of 1964**

**Whether Defendant has established a legitimate, non-discriminatory reason for its employment decision to terminate Plaintiff's position**

**Whether Plaintiff has established that Defendant's excuse for actions is pre-text for discrimination and that there was a causal connection between Plaintiff's race and the adverse employment action**

**Whether Defendant's actions rise to the level of hostile environment**

**VI. SUMMARY JUDGMENT**

**A. The Appropriate Legal Standard**

26.     Summary judgment is a drastic measure which must be applied with caution. *Frito Lay, Inc. v. Retail Clerks Union No. 7,* 629 F.2d 653, 656 (10th Cir. 1980).  It is the burden of the moving party to establish that there is an absence of genuine issues of material fact and to show that it is entitled to judgment as a matter of law. *Bell v. Cameron Meadows Land Co.,* 669 F. 2d 1278 (9th Cir. 1982)  In its determination of whether to grant a summary judgment motion, the Court must assume that all disputed matters are resolved in favor of the non-moving party. *Bishop v. Wood,* 426 U.S. 341 (1976).

27.     When a properly supported motion for summary judgment is made, the non-movant must set forth specific facts which show a genuine issue of fact for trial. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 2s42, 248, 106 S.Ct. 2505,2510, 91 L.Ed.2d 202 (1986)  This evidence need not be submitted in a form which would be admissible at trial. *Celotex Corp., v. Catrett,* 477 U.S. 316, 324 (1986).  All inferences to be drawn from the underlying facts and materials presented must be

viewed in the light most favorable to the non-moving party. *United States v. Diebold,* 369 U.S. 654, 655 (1962).

28.     To determine whether there are any genuine issues of material fact, the court must first consult the applicable law to ascertain what factual issues are material. *Fields v. City of South Houston,* 922 F.2d 1183 (5th Cir. 1991). After the court has consulted the applicable law, it must review the evidence bearing on those issues, while viewing the facts and inferences in the light most favorable to the non-moving party. *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1236-37 (10th Cir. 2002); *Lavespere v. Niagara Mach. & Tool Works*, 910 F.2d 167, 178 (5th Cir. 1990).

29.     A defendant who seeks summary judgment on a plaintiff's cause of action must demonstrate the absence of a genuine issue of material fact by either (1) submitting summary judgment evidence that negates the existence of a material element of plaintiff's claim or (2) showing there is no evidence to support an essential element of plaintiff's claims. *J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc*., 76 F. 3d 1245, 1251 (1st Cir. 1996); *see Celotex Corp*., 477 U.S. at 322-23, 106 S.Ct. at 2552-53.

30.     A defendant cannot rely on conclusory statements to establish that plaintiff has not presented evidence on an essential element of her claim. Rather, defendant must demonstrate the absence of a genuine factual dispute. See *Celotex Corp*., 477 U.S. at 327, 106 S.Ct. at 2555. Only if defendant meets this burden is plaintiff required to respond by summary judgment proof to show a genuine issue of material fact. Fed. R. Civ. P. 56(e). Thus, before a court may grant summary judgment, the moving party must demonstrate that it is entitled to judgment as a matter of law. *Resolution Trust Corp. v. 1601 Partners,* 796 F.Supp. 238 (N.D. Tex. 1992).

31.     The absence of specific grounds for relief in a motion for summary judgment renders the Court powerless to grant summary judgment. *Atchison, Topeka and Santa Fe Ry. Co. v. Buell*, 480

U.S. 557, 568 & n. 15 (1987) Moreover, summary judgment cannot be granted on grounds not specifically set out in the motion. *Id.*

### B. Credibility Issues and the Summary Judgment Standard

32.     Federal Courts have concluded that issues of credibility have no place in a motion for summary judgment.  Such issues fall squarely in the province of the jury. *See Boeing Co. v. Shipman,* 411 F.2d 365,375 (5th Cir. 1969*) (en banc)* ("[I]t is the function of the jury, as the traditional finder of facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.")  Moreover, credibility determinations "are not fit grist for the summary judgment mill and fall squarely within the province of the jury." *See eg., Lindsey v. Prive Corp.,* 987 F.2d 324, 61 FEP Cases 770 (5th Cir.1993); and *Collins v. Baptist Memorial Geriatric Center* 937 F.2d 190 (5th Cir. 1991*), cert denied.*

33.     In this case, issues of credibility exist with Defendant's Exhibit G, the Agenda of the City Council dated August 20, 2019. Dfs. Ex. G (Frederick – Df CoLV Bates No. 0147)

34.     Defendant is attempting to use the Agenda dated August 20, 2019, to show that Mr. Martinez forfeited his position as City Councilman for Defendant and that this forfeiture of office remediated Plaintiff's prior complaint.  In summary, this argument and the use of the Agenda lacks credibility.  Contrary to the Agenda item, the City Council, with Mr. Martinez's vote, voted to terminate Plaintiff's position with Defendant. There was no remediation based upon Mr. Martinez forfeiture of office and the Court should not consider this as evidence of same. For these reasons, and for the argument set forth herein, Defendant's Motion for Summary Judgment should be denied.

## VII. ARGUMENT AND AUTHORITIES

### A. Burden Shifting Analysis

35.     Title VII employment discrimination claims are reviewed under the burden-shifting framework outlined in *McDonnell Douglas v. Green.* 411 U.S. 792 at 802 (1973).   Under this framework, the plaintiff must first establish, by a preponderance of the evidence, a prima facie case of discrimination. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 142 (2000). The burden is one of production and not one of persuasion. *Id.*   If a plaintiff develops such proof, then the defendant must come forward and articulate a legitimate, nondiscriminatory reason for the challenged employment action. *McDonnell Douglas,* 411 U.S. 792 at 802 (1973).   Once the employer provides sufficient evidence to meet this burden, the plaintiff must show that she was the victim of intentional discrimination by showing the employer's proffered explanation is unworthy of credence. *Reeves,* 530 U.S. 133, at 143 (2000); *Davis v. Dallas Area Rapid Transit,* 383 F.3d 309, 317 (5th Cir. 2004).   The plaintiff can meet this evidentiary burden by either providing evidence of discrimination or evidence establishing the falsity of the employer's explanation. *Id. at* 147; *See Kanida v. Gulf Coast Med. Pers. LP,* 363 F.3d 568, 574-75 (5th Cir. 2004).

### B. Plaintiff has established a prima facie case of discrimination

36.     In order to sustain a claim for claim for discrimination based upon a claimant's race and/or gender under Title VII, the claimant has the initial burden to establish the following elements: (1) that she is a member of a protected class; (2) that she was qualified for the position; (3) that she suffered an adverse employment decision by her employer; and (4) that she was treated less favorably than employees who were similarly situated under nearly identical circumstances. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Okoye v Univ. Tex. Houston Health Sci.*

*Ctr.*, 245 F.3d 507, 512-513 (5th Cir. 2001); *Int'l Union, United Auto., Aerospace and Agric. Implement Workers v. Johnson Controls, Inc.*, 499 U.S. 187, 204 (1991).

37.     Plaintiff, an African-American, is a member of a protected class for race discrimination.

38.     Second, in light of the fact Plaintiff held a position with the City of San Antonio (a major metropolitan city with a population of over 1.4 million) as a senior Assistant City Attorney for over twenty years; and in light of the fact that there is no record of any disciplinary actions for failing to abide by her duties as City Attorney for Defendant,  Plaintiff clearly meets the second criteria for the prima facie claim.

39.     Third, Plaintiff meets the third element of her prima facie case because she suffered an adverse employment decision by the hands of her employer when Defendant terminated Plaintiff. *See In Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 62 (2006) (noting what constitutes an adverse employment action is viewed on a case by case basis).

40.     Finally, Plaintiff meets the fourth element of the prima facie case because Plaintiff was singled out as the only person who lodged complaints against Mr. Martinez to be terminated by Defendant. In the first week of April, 2019, several council members emailed the City Manager to bring complaints of sexual harassment and race discrimination against Mr. Martinez. The employees, other than Plaintiff, who lodged complaints included Brandon Melland, Yvonne Acuna, Joann Azar and Jorge Breton.  None of the foregoing individuals, other than Plaintiff, were terminated from their positions with Defendant. Plaintiff's internal complaint resulted in an investigation against Mr. Martinez and others. That investigation went nowhere. Then, prior to filing her EEO complaint, Plaintiff was advised that her position would be terminated. For these reasons, the evidence proves Plaintiff has met her prima facie burden.

**C. Defendant's non-discriminatory reason for its employment actions is pre-text for discrimination.**

41.     To refute a prima facie case of discrimination, a defendant must articulate a legitimate, non-discriminatory reason for its adverse employment decision. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  If the defendant articulates a legitimate, non-discriminatory reason for adverse employment decisions, the plaintiff must provide evidence that the legitimate, nondiscriminatory reason for terminating Plaintiff is false and is a pretext for intentional discrimination. *Price v. Federal Express Corp.*, 283 F.3d at 720 (5th Cir. 2002).

42.     Prior to the vote to cut Plaintiff's position from Defendant's budget, Plaintiff was informed on several occasions that outsourcing the legal duties of the City Attorney would save Defendant money.  On its face, the budgetary reasoning does not make sense. A private firm may have more resources, but the costs are certainly more than the City Attorney. Defendant's own summary judgment evidence clarifies this issue. Notably, Plaintiff with twenty years of experience in municipal law, cost Defendant less of an hourly rate than the paralegal rates in the firm that replaced Plaintiff. By the very nature of this inconsistency, Defendant's argument that Plaintiff was terminated due to budgetary cuts falls short of credibility and devolves directly into pretext for discrimination.

43.     Defendant can offer no proof or elementary reason why Plaintiff was targeted for termination. Defendant can offer no proof or elementary reason why the City Attorney position was the only position targeted by a budget cut during the month of August, 2019. In short, Defendant's basis for terminating Plaintiff's position was pre-text for discrimination.

**D. Defendant's conduct constituted retaliation.**

44.     To present a prima facie case of retaliation under either Title VII or § 1981, a plaintiff must show that: (1) she engaged in an activity protected by Title VII; (2) she was subjected to an adverse

employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *See Banks v. E. Baton Rouge Parish Sch. Bd.,* 320 F.3d 570, 575 (5th Cir. 2003).

45.     The facts and evidence suggest that Plaintiff consistently complained that she was being harassed and abused by Mr. Martinez, Mr. Proffitt and Mr. Hall. The facts and evidence also suggest that Plaintiff lodged an internal complaint which resulted in an investigation. The facts and evidence suggest that the investigation, wrought with inaccuracies, brought no relief to belief. As a result, Plaintiff informed Defendant that she would be filing her own complaint to the EEOC. Within weeks of informing the City Manager, and hence Defendant, that she would be filing an external EEOC complaint for discrimination, Plaintiff was told that her position would be removed from the budget.

46.     The evidence shows that Plaintiff meets the first prong of retaliation because Plaintiff lodged an internal complaint and then informed her only report, the acting City Manager, that she would be filing an EEOC charge. The internal complaint and the threat of filing an EEOC charge constitute engaging in a protected activity. *Id.*

46.     The evidence shows that Plaintiff was subjected to an adverse employment action. Her position was removed, for pre-textual reasons, which ultimately resulted in Plaintiff's termination. Plaintiff clearly meets the second prong for retaliation. *Id.*

47.     Finally, the evidence shows that there was causal nexus between the protected activity Plaintiff undertook and the adverse action of terminating Plaintiff's position. Plaintiff informed the City Manager of her intent to file an EEOC charge in late July 2019. Within weeks, the City Manager informed Plaintiff that the City Council decided to terminate the City Attorney position. Defendant knew of the potential claims Plaintiff would seek through the EEOC charge and because

Plaintiff had already lodged several complaints of race and sex discrimination, decided to retaliate against Plaintiff for filing an external complaint.

48.     For the foregoing reasons, and when looking at all the evidence in favor of Plaintiff, Defendant's Motion for Summary Judgment on Plaintiff's claim for retaliation should be denied.

### E. Defendant subjected Plaintiff to hostile work environment.

49.     Title VII makes it "an unlawful employment practice for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, [age] or national origin." 42 U.S.C.A. § 2000e–2(a)(1). The "terms, conditions, or privileges of employment" includes requiring people to work in a discriminatorily hostile or abusive environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). For conduct to be actionable, it needs to be sufficiently "severe or pervasive." *Harvill v. Westward Comms., LLC,* 433 F.3d428, 434–35 (5th Cir. 2005) (discussing Title VII discrimination in the sexual harassment context). "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

46.     Courts have further noted that the effect on the employee's psychological well-being is relevant to determining whether the plaintiff actually found the environment abusive. *Id.* at 371. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required." *Id.* at 371.

47.     The U.S. Supreme Court further explained that "the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering "all the circumstances." *Oncale v. Sundowner Offshore Services, Inc.* 523 U.S. 75 (1998).

48.     Accordingly, there is no mathematical formula or time element to determine what is severe and pervasive. Rather, the Court should look to the totality of the circumstances and determine what a reasonable person would view as severe and pervasive. *Hockman v. Westward Communications, LLC*, 407 F.3d 317 (5th Cir. 2004).

49.     In this case, Plaintiff informed Defendant on several occasions that the treatment received from Mr. Martinez and his cohorts went beyond abusive. As the facts indicate, Plaintiff was subjected to constant harassment and at times, Plaintiff felt physically threatened. *See* Plaintiff's Exhibits A, B, and C.

50.     Due to the harassment, Plaintiff suffered from extreme bouts of exhaustion and anxiety. Any reasonable person dealing with the harassment Plaintiff was subject to would find that the environment is not only hostile, but toxic to the physical well-being of Plaintiff.

## CONCLUSION AND PRAYER

Plaintiff has provided sufficient evidence to prove there are at least genuine issues of material fact on the elements of discrimination and retaliation based upon Plaintiff's race and hostile working environment. For the aforementioned reasons, Plaintiff prays that the Court deny Defendant's Motion for Summary Judgment and for all other relief to which Plaintiff may show herself to be entitled.

Respectfully Submitted,
THE WILEY LAW GROUP, PLLC


_____

Kevin S. Wiley, Jr.
State Bar No. 24029902
325 N. St. Paul Street, Suite 4400
Dallas, Texas 75201
Telephone: (469) 619-5721
Telecopier: (214) 619-5725
Email: kevinwiley@lkswjr.com
**ATTORNEYS FOR PLAINTIFF**
**VITRA DENISE FREDERICK**


## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing Plaintiff's Response to Defendant's Motion for Summary Judgment has been delivered via electronic mail on this 23rd day of June, 2023 to the attorneys listed below:

**LAW OFFICES OF CHARLES S. FRIGERIO**
Charles S. Frigerio
Riverview Towers
111 Soledad, Suite 840
San Antonio, Texas 78205
(210) 271-7877
(210) 271-0602 Telefax
Email: csfrigeriolaw@sbcglobal.net
frigeriolaw1995@sbcglobal.net
**ATTORNEYS FOR DEFENDANT**
**CITY OF LEON VALLEY**


_____

Kevin S. Wiley, Jr.