IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| VITRA DENISE FREDERICK, | § § § | |
| *Plaintiff,* | § § | SA-21-CV-00381-OLG |
| vs. | § § § | |
| CITY OF LEON VALLEY, TEXAS, | § § § | |
| *Defendant.* | § § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Orlando L. Garcia:**

This Report and Recommendation concerns Defendant City of Leon Valley's Motion for Summary Judgment [#18], which was referred to the undersigned on June 27, 2023. The undersigned therefore has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Defendant's motion be granted in part as to Plaintiff's claims of discrimination and a hostile work environment and denied in part as to Plaintiff's claims of retaliation.

### I.  Background

Plaintiff Vitra Denise Frederick filed this action against Defendant the City of Leon Valley, Texas, after she was officially terminated from her position as City Attorney by a vote of Defendant's City Council. Frederick alleges that, prior to her termination, she was subjected to a continuous pattern of race and sex discrimination and harassment and that, after she complained of the harassment, her position was eliminated. Frederick's Complaint asserts causes of action of race and sex discrimination, a hostile work environment, and retaliation in violation of Title VII

1

of the Civil Rights Act of 1964, and Texas law.  The City of Leon Valley ("Leon Valley") has moved for summary judgment on all of Frederick's claims under Title VII.[1]

## II.  Summary Judgment Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c).  A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp.*, 477 U.S. at 323.  Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial.  *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000).  The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence.  *Topalian v. Ehrman*, 954 F.2d 1125, 1131

---

[1] Leon Valley does not separately address Frederick's state law claims under the Texas Labor Code.  However, the Texas Labor Code's anti-discrimination and retaliation provisions are effectively identical to their federal counterpart, Title VII.  *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012).  Therefore, this Court's conclusions as to Frederick's Title VII claims apply equally to her claims arising under Texas law.

(5th Cir. 1992).  The Court will view the summary judgment evidence in the light most favorable to the non-movant.  *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).  "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted."  *Westphal*, 230 F.3d at 174.

### III.  Summary Judgment Record

The summary judgment record establishes the following disputed and undisputed facts. Frederick is an African American female, who was employed by Leon Valley as its City Attorney from June 23, 2016, to November 30, 2019, when she was terminated by a vote of the City Council.  (Frederick Decl. [#20-1], at ¶ 2.)  Frederick's duties in this position were to advise City Council on proposed city ordinances and all legal matters and to review City contracts.  (*Id.* at ¶ 3.)  Frederick previously worked as an Assistant City Attorney for the City of San Antonio for over 20 years.  (*Id.* at ¶ 4.)

Frederick alleges that in early 2019 she began to experience harassment from former City Council member, Benny Martinez.  (*Id.* at ¶ 6.)  Frederick claims Mr. Martinez berated her publicly during City Council meetings, questioned her skill and knowledge, and verbally abused her outside of meetings by telling her directly she did not belong on City staff.  (*Id.*)  Frederick claims she even felt physically threatened by Mr. Martinez at times.  (*Id.*)  According to Frederick, Will Bradshaw, another City Council member, and Larry Proffitt, the Zoning Commissioner, also joined in the harassment.  (*Id.* at ¶ 7.)

Frederick asserts that she reported the harassment to her supervisor, City Manager Kelly Kuenstler, and stated over the course of several meetings that she believed she was being singled out as an African-American female and that she was the only employee at Leon Valley facing this type of abuse.  (*Id.* at ¶ 8.)  Ms. Kuenstler allegedly agreed to talk to Mr. Martinez and Mr.

Bradshaw privately but did not agree to Frederick's request that Ms. Kuenstler intervene publicly during a City Council meeting. (*Id.*) The harassment allegedly increased, and Frederick filed an official complaint of race and sex discrimination with Leon Valley. (*Id.* at ¶ 9.) An investigation into Frederick's complaint was conducted by an outside law firm, which found no evidence to substantiate Frederick's allegations that she suffered race and sex-based harassment in the workplace. (*Id.* at ¶¶ 9–10.)

Although Frederick's claims were found to be unsubstantiated, shortly thereafter the City Council held multiple hearings and took evidence on numerous complaints by other employees against Mr. Martinez. (*Id.* at ¶ 14; Ltrs. and Minutes [#20-2].) Meeting minutes from an April 16, 2019 hearing reflect that complaints were made against Mr. Martinez by Brandon Melland, Yvonne Acuna, Joann Azar, Jorge Breton, and Catherine Rodriguez. (Minutes [#20-2].) Ms. Rodriguez, who was also a City Councilmember, states in a declaration that she witnessed Mr. Martinez treating Frederick with disrespect, aggression, and hostility; being verbally combative and demeaning towards Frederick in public sessions; and questioning Frederick's education and knowledge of the law. (Rodriguez Decl. [#20-3], at 2.) Ms. Rodriguez also states that Mr. Bradshaw would also demean and belittle Frederick "to no end." (*Id.*) There is one additional letter in the record from Ms. Charles, a former Councilmember, dated May 31, 2023, stating that she witnessed Mr. Martinez belittle Frederick on more than one occasions during public sessions, questioning her knowledge and opinions as an attorney. (Charles Ltr. [#20-4], at 2.)

By summer 2019, the harassment had allegedly become even worse, as a friend of Mr. Martinez, Josh Stevens, also began to attend City Council meetings and question Frederick's ability to do her job. (Frederick Decl. [#20-1], at ¶ 11.) Stevens also allegedly sent personal and threatening emails to Frederick at her office. (*Id.*) In June 2019, Frederick's attorney sent a

cease and desist letter to Mr. Stevens, demanding that he stop making further defamatory comments towards Frederick through email or in person. (*Id.*; Cease and Desist Ltr. [#20-1], at 13.)

Shortly thereafter, Frederick again went to Ms. Kuenstler and requested her public support. (Frederick Decl. [#20-1], at ¶ 12.)  At this meeting, Frederick claims she informed Ms. Kuenstler that she felt she had no choice but to file a complaint with the Equal Employment Opportunity Commission ("EEOC"). (*Id.*)  According to Frederick, several weeks later, in July 2019, Ms. Kuenstler informed Frederick that Leon Valley had decided to eliminate her position from the city budget. (*Id.*)  On August 13, 2019, the City Council voted to eliminate the City Attorney position as a "reduction in force" and transfer the functions of the City Attorney to outside counsel. (*Id.* at ¶ 13.)  The City Council ultimately voted to remove Mr. Martinez from his seat, and he was replaced by another Councilmember on August 20, 2019. (*Id.* at ¶ 14; Minutes [#18-7], at 4.)  Frederick's termination was effective November 30, 2019, for the stated reason that the position was no longer in the budget. (Frederick Decl. [#20-1], at ¶ 14; Personnel Action Request [#18-6], at 2–4.)  Frederick was the only employee who was terminated who lodged a complaint against Mr. Martinez. (Frederick Decl. [#18-1], at ¶ 14.)

In August 2019, the City Council addressed at its meeting whether to fund a contract versus in-house attorney. (Minutes [#18-1], at 8, 15.) Leon Valley solicited proposals from law firms to provide City Attorney services, and at the October 15, 2019 City Council meeting, the top three law firm candidates for legal services gave presentations for recommendation from the City Council. (Request for Proposals [#18-4], at 2–5; Minutes [#18-1], at 19.) On November 5, 2019, the City Council approved the appointment of Denton Navarro Rocha Bernal & Zech to provide legal services as City Attorney for Leon Valley. (Minutes [#18-1], at 45.)

Frederick believes Leon Valley's stated reason for the elimination of her position—budgetary concerns—was pretext for unlawful discrimination and retaliation. On October 16, 2019, Frederick received an email from Mr. Stevens, stating that the elimination of the City Attorney position had nothing to do with the budget and that the City Manager orchestrated Frederick's removal with the budgetary reason as a cover-up. (Frederick Decl. [#20-1], at ¶ 15; Stevens Ltr. [#20-1], at 16.) Additionally, the record reflects that the law firm newly retained by the City bills at rates of $210 per hour for Partners, $180 per hour for Associates, $125 per hour for law clerks, and $95 per hour for Paralegals, whereas Frederick's pay rate was $42.29 per hour. (Engagement Ltr. [#18-5], 2; Personnel Action Request [#18-6], at 2–4.)

## IV.  Analysis

Leon Valley seeks summary judgment on all of Frederick's Title VII claims—sex and race discrimination, hostile work environment, and retaliation. For the foregoing reasons, the District Court should grant summary judgment on Frederick's claims of discrimination and a hostile work environment but allow her retaliation claims to proceed to trial.

**A.     Sex and Race Discrimination**

Title VII prohibits discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). A plaintiff can prove intentional discrimination through either direct or circumstantial evidence. *See Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 235 (5th Cir. 2016). Where a plaintiff offers only circumstantial evidence of discrimination, as here, the *McDonnell Douglas* framework requires her to establish a prima facie case of discrimination, which, only if established, raises a presumption of discrimination. *See Rutherford v. Harris Cty., Tex.*, 197 F.3d 173, 179–80 (5th Cir. 1999) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)). To establish a prima facie case of discrimination, the plaintiff must show

that (1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) others similarly situated were more favorably treated or that she was replaced by someone outside her protected class. *Willis v. Coca Cola Enters., Inc.*, 445 F.3d 413, 420 (5th Cir. 2006).

If established, a plaintiff's prima facie case creates an inference of discrimination that shifts the burden of production to the defendant to come forward with evidence that the adverse employment action was taken for a legitimate, nondiscriminatory reason. *Rutherford*, 197 F.3d at 180. This burden is one of production, not persuasion, and can involve no assessment of credibility. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). Once the employer articulates a legitimate nondiscriminatory reason and produces competent summary judgment evidence in support of that stated reason, the inference of discrimination disappears, and the burden shifts back to the plaintiff to produce evidence that demonstrates the employer's articulated reason for the adverse employment action was merely a pretext for discrimination. *Rutherford*, 197 F.3d at 180.

Leon Valley argues it is entitled to summary judgment on Frederick's discrimination claims because she cannot establish a prima facie case of race or sex discrimination. The undersigned agrees. Although Frederick clearly meets the first three elements of her prima facie case, she has not demonstrated that other similarly situated employees were treated more favorably than she was. In support of this element, Frederick argues that the evidence demonstrates that other employees complained about Mr. Martinez's behavior but were not terminated. This evidence fails to satisfy the governing legal standard. Frederick must present proof that she was treated less favorably than others "under nearly identical circumstances." *Morris v. Town of Independence*, 827 F.3d 396, 401 (5th Cir. 2016); *Willis v. Cleco Corp.*, 749

F.3d 314, 320 (5th Cir. 2014).  To meet this burden, Plaintiff must proffer a comparator who: (1) held the same job or responsibility; (2) shared the same supervisor; (3) had essentially comparable violation histories; and (4) engaged in nearly identical conduct to the conduct that resulted in plaintiff's termination.  *Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 322–23 (5th Cir. 2021).  She has not done so, as her summary judgment evidence does not address any of these details as to the nature of the other complaints against Mr. Martinez or the identity and nature of employment of the comparators.  Leon Valley is therefore entitled to summary judgment on Frederick's discrimination claims.

B.     **Hostile Work Environment**

"The creation of a hostile work environment through harassment . . . is a form of proscribed discrimination."  *E.E.O.C. v. Boh Bros. Constr. Co., L.L.C.*, 731 F.3d 444, 452 (5th Cir. 2013) (quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 452 (2013) (Thomas, J., concurring)).  There are four elements of a hostile work environment or harassment claim under Title VII: (1) the employee belongs to a protected class; (2) she was subject to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a "term, condition, or privilege" of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action.  *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005).  To affect a term, condition, or privilege of employment, the harassing conduct "must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Aryain v. Wal–Mart Stores of Tex., L.P.*, 534 F.3d 473, 479 (5th Cir. 2008) (alteration in original) (internal quotation and citation omitted).  We use an objective "reasonable person" standard to evaluate severity and pervasiveness.  *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998).

Ultimately, whether an environment is hostile or abusive depends on the totality of circumstances. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

Frederick has also failed to establish a prima facie case of actionable harassment. Even if Frederick could establish that the harassment she suffered was sufficiently severe or pervasive to alter the conditions of her employment, she has not presented evidence from which a reasonable factfinder could conclude that this harassment was based on her sex or race. Frederick repeatedly states in her declaration her subjective belief that Mr. Martinez's harassment was due to her being African American and a woman. Viewing the evidence in the light most favorable to Frederick, the record establishes that Mr. Martinez repeatedly undermined her skills, training, and intelligence without any basis to do so. Yet, there is no objective evidence in the record to substantiate that his belief that Frederick was unqualified to serve as City Attorney was based on discriminatory animus towards her race and sex. Rather, the summary judgment record establishes that Mr. Martinez generally engaged in rude and offensive behavior towards multiple people, resulting in the filing of numerous complaints by other employees, not just those who were women and African American. Moreover, although there is evidence in the form of statements by other Councilmembers that Frederick was targeted specifically by Mr. Martinez, these statements do not describe any harassment related to Frederick's sex or race. Leon Valley is also entitled to summary judgment on Frederick's hostile work environment claims.

**C.     Retaliation**

Title VII's retaliation provision makes it unlawful for an employer to discriminate against an employee because she "has opposed any practice made an unlawful employment practice by this chapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 2000e–3(a). Where

9

a retaliation claim is based on circumstantial evidence, the burden-shifting framework also applies. *Cooper v. Dallas Police Ass'n*, 278 Fed. App'x 318, 320 (5th Cir. 2008). To establish a prima facie case of retaliation under Title VII, Frederick must establish three elements: (1) she engaged in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) a causal connection exists between that protected activity and the adverse employment action. *Brazoria Cty., Tex. v. Equal Employment Opportunity Comm'n*, 391 F.3d 685, 692 (5th Cir. 2004) (emphasis omitted) (internal quotation marks omitted). If the plaintiff successfully establishes a prima facie case, the burden then shifts to the employer to provide a "legitimate, nonretaliatory reason for the adverse employment action." *Hockman v. Westward Commc'n LLC*, 407 F.3d 317, 330 (5th Cir.2004). If the employer asserts a nonretaliatory explanation, the plaintiff's prima facie case disappears, and the plaintiff must produce evidence that shows the given reason is merely a pretext for retaliation. *See McDonnell Douglas*, 411 U.S. at 804.

Frederick has established a prima facie case of retaliation. Protected activity under Title VII includes opposing a practice made unlawful by Title VII, such as discrimination based on "race, color, religion, sex, and/or national origin." *See* 42 U.S.C.A. § 2000e-2(a). An employee that files an internal complaint of discrimination engages in a protected activity. *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 194 (5th Cir. 2001), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). The record establishes that Frederick filed an internal complaint of discrimination in early 2019 and then, in the summer of 2019, she told her supervisor that she intended to file a formal complaint with the EEOC. A few weeks later, Frederick's supervisor informed her that Leon Valley was going to eliminate her position and terminate her employment. The temporal proximity between Frederick's protected activity and the adverse employment action, which is a period of only a few weeks, is sufficient evidence of

10

causation to establish a prima facie case of retaliation. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

The burden then shifts to Leon Valley to produce a legitimate non-retaliatory basis for Frederick's termination. *See McDonnell Douglas*, 411 U.S. at 804. Leon Valley has proffered a legitimate non-retaliatory reason for Frederick's termination—its budgetary concerns about continuing to employ an in-house attorney. The burden thus shifts back to Frederick to raise a genuine issue of material fact on the question of whether Leon Valley's stated reason was pretext for unlawful retaliation. "A plaintiff may establish pretext by showing that a discriminatory motive more likely motivated her employer's decision, such as through evidence of disparate treatment, or that her employer's explanation is unworthy of credence." *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013).

Frederick has provided the Court with sufficient evidence to raise a fact issue on pretext. First, the temporal proximity between her protected activity and Leon Valley's decision to terminate her employment is very close. It is well-established that temporal proximity alone is not sufficient evidence of the but-for causation required to ultimately prevail on a claim of retaliation. *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). Ultimately, in order to survive a motion for summary judgment, a plaintiff must show that there is a genuine dispute on the question of whether the employer would have taken the adverse employment action but for the protected activity. *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019). Yet here, Frederick also has provided the Court with a letter from a private citizen, claiming to have personal knowledge that the elimination of her position had nothing to do with the budget but rather was orchestrated as a "cover-up" of the real motives of the City Manager to remove

Frederick from City staff.  (Stevens Ltr. [#20-1], at 16.)  There is also evidence that Frederick's pay rate was less than half of what paralegals at the newly retained law firm are charged for the legal services they will be performing for the City.  (Engagement Ltr. [#18-5], 2; Personnel Action Request [#18-6], at 2–4.)  This evidence undermines the credibility of Leon Valley's assertion that its decision to eliminate Frederick's position was a financial one.  When viewed alongside the close temporal proximity of Frederick's protected activity and the termination decision, the evidence raises a fact issue on pretext.  Because Frederick has shown a "conflict in substantial evidence" on the question of whether Leon Valley would have terminated her position "but for" her complaints of discrimination, *Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996), the District Court should deny Leon Valley's motion for summary judgment on Frederick's claims of retaliation.

## V.  Conclusion and Recommendation

Having considered Defendant's motion, the response and reply thereto [#20, #21], the summary judgment record, and the governing law, the undersigned recommends that Defendant City of Leon Valley's Motion for Summary Judgment [#18] be **GRANTED IN PART AND DENIED IN PART** as follows.  The District Court should grant summary judgment to Defendant on Plaintiff's claims of sex and race discrimination and a hostile work environment.  The District Court should deny summary judgment to Defendant on Plaintiff's claims of retaliation.

## VI. Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified

mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections are limited to no more than 20 pages unless leave of court is granted. The party shall file the objections with the Clerk of Court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

    **IT IS SO ORDERED.**

    SIGNED this 22nd day of September, 2023.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE